UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACY N. TUNELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:07CV77SNL |
| CITY OF BELLA VILLA and OFFICER CHRISTOPHER EVELAND, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Plaintiff has filed this multicount §1983 action alleging that he was arrested and denied access to the courts, by defendant Eveland, in retaliation for exercising his First Amendment right of free expression; and a municipal liability claim against the City of Bella Villa for failing to properly train, supervise and/or control defendant Eveland and allowing him to perpetuate a "pattern of transgressions" by the City of Bella Villa police officers as a whole. This matter is before the Court on defendants' motion for summary judgment (#11), filed January 4, 2008. Responsive pleadings have now all been filed and the matter is ripe for disposition. This cause of action is set for trial on the Court's trial docket of June 16, 2008.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden

is on the moving party.  Mt. Pleasant, 838 F.2d at 273.  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).  Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999).  However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy.  Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

A few preliminary matters must be addressed prior to the Court's ultimate review and determination of the pending summary judgment motions.  Firstly, the Court recognizes that plaintiff recently amended his complaint, following the filing of the summary judgment motion, to set forth some type of narrative regarding probable cause for his arrest in the first place.  The connection of this alleged lack of probable cause argument to his First Amendment claims is

tenuous at best. His First Amendment claims rest on a freedom of speech foundation, not an illegal Fourth Amendment arrest. Although the Court finds all argument and disputes as to events leading up to the arrest, except for the plaintiff's expression of his opinion as to defendant Eveland's occupation, immaterial and irrelevant to the case before this Court, it will briefly address the issue.

The relevant facts of this case are largely undisputed.[1] On the evening of September 23, 2006 at approximately 11:45 p.m., defendant Eveland was conducting a traffic stop of an unidentified individual. Traveling eastbound on Bayless Ave, having already consumed four to five (4-5) beers, plaintiff observed Eveland effectuating the traffic stop. Plaintiff passed by defendant Eveland, and hollered out his open passenger side window "why don't you get a real job".[2] Tunnell continued driving and entered Interstate 55. He had traveled to the second exit off Interstate 55 from Bayless Ave., when he was pulled over by defendant Eveland.

Officer Eveland approached the plaintiff's car, and asked for plaintiff's driver's license and proof of insurance. Plaintiff refused, and instead told defendant Eveland that because plaintiff was now within the city limits of St. Louis, he had called 911 and requested that a St. Louis City police officer respond to the scene. Defendant Eveland also contacted St. Louis City Police and requested a St. Louis City police officer to respond to the scene.

---

[1]The facts as set forth by the Court are largely derived from the defendants' statement of facts (#13), and exhibits and depositions filed by the parties. In his opposition to the instant summary judgment motion and the defendants' statement of facts, plaintiff admits all facts and only objects to those material facts as set forth in ¶¶ 10, 23, 24, , 27, and 29. The Court has reviewed these objections and/or denials and finds same to be either immaterial or irrelevant to the issue(s) at hand. His objections fail to create any genuinely disputed issues of fact. The Court will consider these "disputed" facts and adopt same as necessary. All remaining material facts, as stated in Document #13 are deemed admitted for summary judgment purposes. The Court has carefully reviewed the plaintiff's "additional material facts" and finds that these "material facts" are irrelevant to the First Amendment and municipal liability claims. They consist of generalizations, speculations, and legal conclusions for the most part. However, in the rare instance an undisputed material fact relevant to the claims present in this lawsuit is proffered, it will be considered in the Court's summary judgment determination.

[2]There is a minor dispute as to whether plaintiff's actual comment included an obscenity.

While waiting for the City police officer, defendant Eveland told plaintiff that he could detect the odor of alcohol on plaintiff's breath. At the time of this stop, plaintiff had a loaded shotgun in the truck. He had a concealed gun permit in his wallet on his person.

After the City police officers arrived, they discussed the matter with defendant Eveland. The City police officers then told plaintiff he was being taken to the Bella Villa police station. Plaintiff, knowing that it was a felony to be in possession of a loaded weapon while under the influence of alcohol despite having a concealed gun permit, told the City police officers of the presence of the shotgun in his truck.[3]

The City police officers transported plaintiff to the Bella Villa police station wherein plaintiff was turned over to defendant Eveland's custody. While at the Bella Villa police station, plaintiff voluntarily agreed to blow into a breath alcohol content testing machine.[4] The breath alcohol content testing revealed that plaintiff's breath analysis was .089. Plaintiff understood that .089 was over the legal limit for breath alcohol content. Upon receipt of the breath alcohol test results, defendant Eveland completed the paperwork to charge plaintiff with DWI. He issued plaintiff tickets for Bella Villa municipal ordinance violations of failure to maintain a single lane, failure to comply with a police officer's request, DWI, and failure to yield to an emergency vehicle.

Defendant Eveland was aware of the requirement to give plaintiff a copy of Form 2385 after he arrested and completed the paperwork for the DWI charge. Defendant Eveland believes that he did give plaintiff a copy of the Form 2385 along with all the other paperwork pertaining to plaintiff's charges. Form 2385 is a requirement by the Department of Revenue, pursuant to

---

[3] It doesn't appear to be significant to the issues of First Amendment retaliation or municipal liability, but evidently, defendant Eveland was apprised by the City police officers of the shotgun, and prior to the truck being towed, it was retrieved and placed into an evidence bag.

[4] There is a dispute as to who administered the test; plaintiff claims that defendant Eveland administered the test, however, both defendant Eveland and Police Chief Edward Locke attest that it was Chief Locke who administered the test. Whomever administered the test is irrelevant because it is undisputed that plaintiff took the breath test voluntarily and there is no dispute as to the result.

4

§302.520 R.S.Mo., informing a person charged with DWI of the suspension of their driving privileges for fifteen (15) days, and the procedure by which to appeal such suspension.

Plaintiff was then transported to the St. Louis County jail in Clayton, Missouri where he was processed and held for twenty-four (24) hours. On or about September 27, 2006 plaintiff contacted Matt Hearne, an attorney, about his arrest in Bella Villa. He gave Mr. Hearne copies of his tickets and other paperwork, but upon being asked about receipt of a Form 2385, plaintiff told Mr. Hearne he did not receive a copy of said form. Mr. Hearne explained the administrative suspension process to plaintiff. Plaintiff's Exhibit 5 - Affidavit of Matt Hearne. Mr. Hearne did not inquire as to the Form 2385 from the Bella Villa police department nor made any inquiries of the Department of Revenue regarding any suspension. Mr. Hearne assumed no administrative suspension had been commenced because plaintiff contended he did not receive a copy of Form 2385.

Evidently, the administrative suspension process had been commenced by the Department of Revenue. On or about October 2, 2006 Mr. Hearne requested to plea bargain the charges, including the DWI, in the Bella Villa Municipal Court. The Prosecuting Attorney for Bella Villa recommended reducing the DWI to careless and imprudent driving, no charge regarding the shotgun, and the three (3) other charges were reduced to illegal parking charges. On or about December 16, 2006 Mr. Hearne accepted this plea bargain on behalf of plaintiff. Plaintiff's Exhibits 5 and 12.

In February 2007, plaintiff had to complete a community services requirement - Weekend Intervention Program, in St. Charles, Mo. Upon completion of this program, plaintiff's driving privileges were reinstated. Plaintiff's Exhibits 13 and 16.

Defendant Eveland is a graduate of a police academy certified by the Missouri Department of Safety. He had prior law enforcement experience prior to joining the Bella Villa police department. Defendant Eveland received specific training on making DWI arrests, and the proper paperwork to be completed in making such arrests. Neither the Bella Villa police department nor the City of Bella Villa has received any prior complaints regarding defendant Eveland's alleged failure to provide a DWI arrestee with Form 2385. Neither the Bella Villa police department nor

5

the City of Bella Villa has received any prior complaints regarding any Bella Villa police officer's alleged failure to provide a DWI arrestee with a Form 2385.

The Mayor and the Bella Villa Board of Alderman supervise Chief Locke and the Bella Villa police department. Chief Locke must seek and obtain approval from the Board of Alderman to issue policies related to the Bella Villa police department.

Plaintiff contends that defendant Eveland arrested him for yelling at Eveland while he was making a traffic stop. He further contends that Eveland intentionally failed to give him Form 2385 for exercising his First Amendment rights. Plaintiff contends that the City of Bella Villa failed to properly train defendant Eveland as to DWI arrests, especially as to the requirement to furnish the arrestee with a copy of Form 2385. Plaintiff further contends that the City of Bella Villa is liable because it has a custom or policy of allowing its police officers to engage is a "pattern of transgressions" and cites to other lawsuits filed by plaintiff's counsel against the City of Bella Villa. Finally, it appears that plaintiff contends that the City of Bella Villa is liable under a theory of *respondeat superior*.

Defendants contend that plaintiff cannot pursue a §1983 claim regarding an arrest without probable cause because he entered a plea to charges arising from his arrest. Defendants further contend that plaintiff fails to set forth any affirmative evidence that the alleged failure to give plaintiff a copy of Form 2385 was anything other than an mere oversight; i.e. was not done intentionally in retaliation for plaintiff's exercise of his First Amendment right of free expression. Defendants further contend that defendant Eveland is protected by qualified immunity because he believes he did provide plaintiff with a copy of Form 2385, and if he didn't, it was just mere negligence. Defendants contend that plaintiff has failed to set forth any affirmative evidence showing that a policy exists permitting Bella Villa police officers to arrest without probable cause and/or to intentionally not give DWI arrestees a copy of Form 2385 so that they cannot timely appeal the suspension of their driving privileges.

## Plaintiff's §1983 Claims

There is no actual §1983 claim in plaintiff's original complaint or in his amendment by interlineation for wrongful arrest without probable cause. Instead, plaintiff provides a lengthy

6

"factual narrative" in order to buttress his §1983 claim of First Amendment retaliation. However, after careful review of the relevant caselaw, plaintiff cannot make out §1983 claim for either retaliatory prosecution or for denial of access to courts.

Plaintiff first claims that defendant Eveland arrested him without probable cause and in retaliation for yelling at him. In a recent United States Supreme Court case, Hartman v. Moore, 547 U.S. 250 (2006), the Court held that a government official may not retaliate through prosecution against an individual for the exercise of First Amendment rights. *See*, Osborne v. Grussing, 477 F.3d. 1002, 1005 (8th Cir. 2007). However, a plaintiff setting forth such a claim must still both plead and prove a lack of probable cause as to the underlying charge in order to sustain his First Amendment retaliation claim. Williams v. City of Carl Junction, 480 F.3d. 871, 875 (8th Cir. 2007); Osborne, at 2006.

It is undisputed that plaintiff's (then) counsel, Mr. Hearne, sought and got for plaintiff a plea deal for the charges arising out of his arrest on the night of September 23, 2006. Plaintiff ultimately pled guilty to careless and imprudent driving in connection with the arrest and charges of September 23, 2006. A guilty plea forecloses plaintiff's §1983 claim for any constitutional claims arising out of his arrest and charges of the night of September 23, 2006. Williams v. Schario, 93 F.3d. 527, 528 (8th Cir. 1996); Malady v. Crunk, 902 F.2d. 10, 11 (8th Cir. 1990); *see also,* Gooden v. Lovern, 32 Fed.Appx. 179180 (8th Cir. 2002); Carmi v. City of St. Ann, Missouri, 22 Fed.Appx. 674, 675 (8th Cir. 2001)(an *Alford* plea forecloses a §1983 Fourth Amendment claim); Youngblood v. McCastlain, 2008 WL 150204 (E.D.Ark. Jan. 14, 2008); Collins v. Bruns, 2005 WL 2211150 (E.D.Mo. Sept. 9, 2005). Plaintiff asserts that since the original charges were "modified" via the plea deal, his guilty plea does not extinguish his §1983 claim for arrest without probable cause. He offers no caselaw whatsoever for this proposition. This Court finds that all that is required is for plaintiff to have pled guilty to any charges arising out of his arrest the night of September 23, 2006. Thus, his guilty plea does foreclose his claim of arrest without probable cause.

Furthermore, a judgment in plaintiff's favor on this lack of probable cause claim would "necessarily imply the invalidity of his conviction or sentence". Heck v. Humphrey, 512 U.S. 477,

7

487 (1994). Plaintiff's §1983 claim regarding lack of probable cause and retaliatory arrest are not cognizable unless and until Tunnell shows his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, *supra.* Tunnell has not made such a showing.

Plaintiff's second §1983 claim is that defendant Eveland intentionally failed to give him the state statutorily required "Form 2385" apprising him of his appeal rights; thereby, denying him access to the courts. This claim also fails.

The right of access to the courts is well-established. Morris v. City of Chillicothe, 512 F.3d. 1013, 1020 (8th Cir. 2008); Scheeler v. City of St. Cloud, 402 F.3d. 826, 830 (8th Cir. 2005) *citing* Christopher v. Harbury, 536 U.S. 403, 415 (2002). "The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." Scheeler, at 830 *citing* Alexander v. Macoubrie, 982 F.2d. 307, 308 (8th Cir. 1992); *see also*, Morris, at 1020 *citing* Scheeler, at 830. In cases involving a First Amendment denial-of-access- claim, "[i]n order to prevail on such a claim, a plaintiff must show that the defendants acted with some intentional motivation to restrict his access to the courts. The plaintiff must show governmental action was designed to prevent access to the courts." Scheeler, at 830 *citing* Whisman v. Rinehart, 119 F.3d. 1303, 1312-13 (8th Cir. 1997); *see also*, Morris, at 1020 *citing* Scheeler, *supra.*

Reviewing the record in the light most favorable to the plaintiff, the Court finds nothing in it to indicate that defendant Eveland intentionally withheld Form 2385 in order to deprive plaintiff of his access to the courts. Plaintiff has nothing to proffer on the issue of intent other than his belief that defendant Eveland, and not Chief Locke, administered the breath test. The objective evidence shows otherwise; however, even if Chief Locke was the one who administered the test, this is irrelevant to any intent by defendant Eveland to purposefully withhold Form 2385 from plaintiff in order to deprive him of his access to the courts. Furthermore, plaintiff testified that he has no evidence other than his subjective opinion that defendant Eveland intentionally failed to give him Form 2385.

> Q. (by defendant's counsel) Okay. Now, I ask you whether you felt that it was some kind of intentional withholding of information by Officer Eveland as opposed to some kind of mistake on his part in not giving you paperwork. Do you have a reason to believe that it was intentional as opposed to some kind of mistake?
>
> A. (by plaintiff) Well, I don't know why he wouldn't have. I mean.
>
> Q. Is it possible that he made a mistake?
>
> A. I don't know. I can't . . . I don't know.
>
> Q. So you don't know whether it was an intentional act on his part as opposed to a mistake?
>
> A. I don't know.

Plaintiff's Deposition, pg. 66.

It is undisputed that there was no history of animosity between plaintiff and defendant Eveland. It is undisputed that plaintiff was cooperative in that he voluntarily took the breath test. Defendant Eveland has attested to the fact that he is aware that Form 2385 should be given to persons charged with a DWI, He further attests that although plaintiff would not sign the Form 2385, he nonetheless gave him a copy of same. Plaintiff contends that because he was not given the Form 2385 he was unaware of his rights to appeal his DWI and suspension of his driving privileges within a certain amount of time. However, plaintiff's own testimony is that he discussed the charges against him, including the DWI, with an attorney within 48 hrs of the incident at hand. He further acknowledges, as does his attorney at the time, that the significance of Form 2385 was discussed. Plaintiff offers no explanation as to why, assuming that he did not have a copy in his possession, and knowing of its importance, he did not contact the Bella Villa police department or the Missouri Department of Revenue as to its existence.

There simply is no evidence on the record by which any reasonable juror could conclude that defendant Eveland intentionally withheld Form 2385 from the plaintiff. At best, assuming that it was not given to plaintiff, all that has been shown is mere negligence, which does not rise to the level of a constitutional violation, Simkins v. Bruce, 406 F.3d. 1239, 1242 (10th Cir. 2005); or a violation of state law or state-agency regulations, which also does not rise to the level of a constitutional violation, Scheeler, at 832 *quoting* Whisman, at 1312.

In light of plaintiff's failure to set forth affirmative evidence to successfully challenge defendant Eveland's summary judgment arguments regarding First Amendment retaliation and denial of access to the courts, the Court finds no need to address the issue of qualified immunity.

**Municipal Liability**

Since plaintiff has failed to prove a deprivation of his constitutional rights, his §1983 claim against defendant City of Bella Villa must fail. Williams v. City of Carl Junction, Missouri, at 878; *see also*, Monell v. Dept. of Soc. Services of New York, 436 U.S. 658, 694 (1978).

Even if this were not the case, plaintiff still has failed to set forth any affirmative evidence by which a reasonable juror could find the City of Bella Villa liable for either having a policy of allowing officers to arrest without probable cause or failing to provide Form 2385 for DWI arrests; and/or failing to train, control or supervise defendant Eveland due to a "pattern of transgressions" by Bella Villa police officers in general.

Liability under §1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation, Monell v. New York City Department of Social Services, 436 U.S. 658, 690-94 (1978); Davison v. City of Minneapolis, Minnesota, 490 F.3d. 648 (8th Cir. 2007); Granda v. City of St. Louis, 472 F.3d. 565, 568 (8th Cir. 2007); Avalos v. City of Glenwood, 382 F.3d. 792, 802 (8th Cir. 2004), or is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law." Granda, at 568 *quoting* Kuha v. City of Minnetonka, 365 F.3d. 590, 603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tortfeasor. Monell, 436 U.S. at 694.

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." Russell v. Hennepin County, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* Angarita v. St. Louis County, 981 1537, 1546 (8th Cir. 1992)(*citing* St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988)). Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, *see,* Davison, *supra.*, *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting

policy in that area of the government's business." Davison, *supra.*, *quoting* Praprotnik, 485 U.S. at 123; *see*, Angarita, at 1546.

There is a distinction between final policymaking authority and final decisionmaking authority. In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court supplemented its pronouncement that "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id., 475 U.S. at 483, n.12. For example, a county sheriff may have the discretion to hire and fire sheriff department employees but this does not make his the county official responsible for establishing county employment policy. This would be true even if the county sheriff exercised that discretion in an unconstitutional manner. *See*, Davison, *supra. citing* Pembaur, 475 U.S. at 483, n.12. Whether an official had final policymaking authority is a question of state law. Pembaur, 475 U.S. at 483 (noting that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.").

"Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not `subject to significant review' because the officer was in a `policy making position . . . represent[ing] the official policy of the municipality.'" Granda, at 568 *quoting* McGautha v. Jackson County Collections Dept., 36 F.3d. 53, 56 (8th Cir. 1994). However, before a municipality can be held liable, there must be an unconstitutional act by the municipal employee or official. Russell, at 846; Avalos, at 802. A municipality is not liable under §1983 for the negligent acts of its employees/officials. Russell, at 846 *citing* Daniels v. Williams, 474 U.S. 327, 330-31 (1986); *see also*, Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" Russell, at 847 *quoting* Hayes v. Faulkner County, 388 F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and

11

likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker", then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law". "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . as to [have] the force of law.'" Russell, at 849 *quoting* Harris v. City of Pagedale, 821 F.2d. 499, 504, n7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691). In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. Russell, at 849 *citing* Larson v. Miller, 76 F.3d. 1446, 1453 (8th Cir. 1996)(en banc). Central to this standard is that the alleged misconduct must be "pervasive constitutional violations"; thus, liability for an unconstitutional custom or practice cannot arise from a single act. McGautha, at 56-57 (citations omitted).

Although it is difficult to discern from his complaint and responsive pleading, it appears that the plaintiff is alleging that defendant Locke is a "final policymaker" for the City as regards this incident. He now claims that Chief Locke told defendant Eveland to charge him with a DWI. He does not allege any particular policy or custom which defendant Locke carried out in telling Eveland to charge plaintiff with a DWI. As best as the Court can figure out, plaintiff is claiming that the absence of a policy is a policy. He offers no caselaw to support this proposition. His "evidence" that defendant Locke is a "final policymaker" is that he makes daily decisions regarding the operation of the Bella Villa police department, and there is no written policy or procedure manual regarding the police department. Again, he offers no caselaw to support his belief that absence of a written manual constitutes a "policy or custom" giving rise to §1983 municipal liability.

This Court has already made a judicial determination that the City's Board of Alderman is the final policy-making authority for the City and its police department.[5] Although defendant Locke oversees and manages the daily operations of the police department, he must confer with and seek approval from the Mayor and the Board of Alderman for any policies, if any, he wishes to implement in the police department. The evidence before the Court, taken in a light most favorable to the plaintiff, is only that upon having the results of the breath test (which showed a blood alcohol content over the legal limit) the Chief of Police instructed his subordinate police officer to charge plaintiff with a DWI.

Plaintiff has failed to demonstrate that anyone within the City's government promulgated or articulated an official policy of not providing DWI arrestees with a copy of Form 2385 in order to deprive them of information regarding their appellate rights. Plaintiff has failed to demonstrate that either the Mayor or the Board of Aldermen delegated its policy-making authority to Chief Locke concerning any policy regarding the furnishing or non-furnishing of a state-law required document; i.e. Form 2385, in a discretionary manner.

For purposes of this summary judgment motion, all plaintiff has demonstrated is that Locke and Eveland may have had a brief conversation regarding the plaintiff at the scene of arrest, and that when plaintiff inquired about the charges, Eveland stated he smelled alcohol on plaintiff so "probably a DWI". Plaintiff contends that "[t]here is an implication from this statement that Chief Locke told Defendant Eveland to charge Plaintiff with DWI." Plaintiff's memorandum in opposition to defendants' summary judgment motion (#25), pg. 19. As a non-policymaking municipal employee, plaintiff has to show that defendant Locke (as well as others in the police department) were engaging in a "widespread and persistent pattern of unconstitutional misconduct"[6] which City officials were either "deliberately indifferent to" or tacitly approved.

---

[5]Schmidt v. City of Bella Villa, Case No. 4:06CV265SNL, Order #76, filed August 13, 2007.

[6]It is unclear from the plaintiff's response what exactly is the "widespread and persistent pattern of unconstitutional misconduct"; i.e. informing people that they may be charged with a DWI because alcohol is smelled on their breath, or failing to give Form 2385 to a person charged with a DWI.

The evidence before the Court clearly establishes that there were no other complaints regarding the processing of a person for a DWI following a police officer's detection of the smell of alcohol on a person and a breath alcohol content reading of over the legal limit or the failure to give a copy of Form 2385 prior to September 23, 2006. *See*, Mettler v. Whitledge, 165 F.3d. 1197, 1204-1205 (8th Cir. 1999)(§1983 municipal liability can be established where plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct). He offers no evidence that any Bella Villa municipal official was aware of arrests for DWI following a detection of alcohol on a driver's breath and the failure of said driver to pass a blood alcohol breath test or the failure to give a DWI arrestee a copy of Form 2385 by Bella Villa police department employees prior to September 23, 2006. He has offered absolutely no evidence that disputes the fact that this was a single incident of an alleged constitutional misconduct, not taken in furtherance of any known municipal policy, by a non-policymaking municipal employee. This incident may rise to the level of negligence, but it does not establish causation sufficient to support a claim of municipal liability under §1983.

Plaintiff's other claim for municipal liability is that the City failed to properly train, instruct, and control defendant Eveland. In order to impose liability on a government entity based upon a "failure-to-train" claim, a plaintiff must show that the government entity's lack of training amounts to deliberate indifference to the rights of the public who come in contact with the government entity's employees; that a deliberate choice was made regarding this lack of training; that it would have been obvious to reasonable decision-makers that this lack of adequate training would result in constitutional violations; and that there was a causal connection between this lack of training and the plaintiff's injury. Canton v. Harris, 489 U.S. 378 (1989). A plaintiff may show deliberate indifference from evidence of decisionmakers' continued adherence to a training program they knew or should have known to be deficient in preventing employees' unconstitutional/tortious conduct. Ward v. City of Des Moines, 184 F.Supp. 2d. 892, 898 (S.D.Iowa 2002) *citing* Brown, 520 U.S. at 407. A plaintiff can also impose liability upon showing that a pattern of tortious conduct by inadequately trained employees indicates a lack of proper training, as opposed to a single negligent administration of the training program. Ward, at

14

898 *citing* Brown, 520 U.S. at 407-08; *see also*, Smith v. Watkins, 159 F.3d. 1137, 1138-39 (8th Cir. 1998). Finally, a plaintiff can impose liability upon showing that "factors peculiar to the officer involved in the incident is the moving force behind the plaintiff's injury". Ward, at 898 *citing* Brown, 520 U.S. at 407-08; *see also*, Smith v. Watkins, at 1139.

Plaintiff has offered no evidence to support her general conclusion that the City failed to properly train, supervise, instruct or control defendant Eveland. There is no dispute that he is a graduate of a recognized state police academy. There is no dispute that the City has paid for and he had attended law enforcement continuing education courses. There is no dispute that he is in compliance with state law requirements for his position. Finally, there is no dispute that the City had not received any prior complaints of misconduct about defendant Eveland. All plaintiff has shown is a single incident of an alleged violation of federal rights. A single incident does not alone permit an inference of municipal culpability and causation unless accompanied by a showing that the municipality failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. Ward, at 898-99 *citing* Brown, 520 U.S. at 408. Plaintiff has not presented such evidence. Plaintiff's claim for municipal liability based on a failure-to-train, instruct, supervise, and/or control defendant Eveland must fail.

Finally, plaintiff contends that his "evidence" of a "pattern of trangressions" tacitly approved by not only Chief Locke but evidently the Mayor and Board of Aldermen for the City, are the other lawsuits filed by plaintiff's counsel. First of all, other lawsuits are not "evidence" of a "pattern of transgressions" but simply people **alleging** that their rights have been violated. A complaint is not a final adjudication on the merits of such allegations. Secondly, of the cases cited by the plaintiff, one has been fully adjudicated and the defendants were exonerated[7], and the other case was closed on summary judgment for the defendants and is presently on appeal[8]. Finally, none of the other cases cited by the defendant involved a First Amendment retaliatory arrest or denial of access to court claim based upon a DWI charge and/or a failure to provide Form 2385.

---

[7]Cook v. City of Bella Villa, et. al., Case No.4:06CV1531SNL

[8]Schmidt v. City of Bella Villa, et. al., Case No. 4:06CV265SNL

Finally, plaintiff's last claim is for municipal liability based upon the doctrine of *respondeat superior*. It is well-established that municipalities are not subject to *respondeat superior* or vicarious liability under §1983. Monell, 436 U.S. 658, 694 (1978). Plaintiff contends that this Court should ignore this well-settled legal doctrine because of remarks made in the dissent in Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 416 (1997). The Court will not do this. Plaintiff's claim against defendant City of Bella Villa based upon *respondeat superior* fails as a matter of law.

Dated this __10th__ day of June, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE